IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| THERESA J. SIMMINGTON | : | |
| | : | |
| v. | : | Civil Action No. DKC 08-3169 |
| | : | |
| ROBERT M. GATES, SECRETARY, | | |
| DEPARTMENT OF DEFENSE | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination and civil rights action is a motion to dismiss or, in the alternative, for summary judgment filed by Defendant Robert M. Gates, Secretary of the United States Department of Defense. (Paper 20). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

## I.   Background

The following facts are either uncontroverted or construed in the light most favorable to Plaintiff, the non-moving party. Plaintiff Theresa J. Simmington is an African-American female. Beginning in September 2000, she was employed as an Information Technology ("IT") Specialist, GS-2210-13 at the Maryland Field Office of the Department of Defense ("DOD"), Defense Security Services ("DSS" or the "Agency"), located in Linthicum,

Maryland.  (Paper 1 ¶ 1).  She was later reassigned to the DSS Field Office located in Alexandria, Virginia.  (*Id.*). Plaintiff's primary duties and responsibilities included safeguarding classified information in Information Systems ("IS") and networks utilized by National Industrial Security Program contractors.  (Paper 21, Attach. 1).  She was also responsible for maintaining staff surveillance over industrial security requirements for contractor IS networks and developing guidelines and standards for analyzing, testing, and evaluating the security features of IS networks.  (*Id.*).

According to Plaintiff, the alleged discriminatory conduct commenced in 2003 when Plaintiff began documenting and voicing concerns with management about the unpreparedness and unprofessionalism of the facility staff of the Johns Hopkins University Applied Physics Laboratories facility. (Paper 1 ¶ 14).

**A.   Supervisory Inquiry Regarding Lockheed Martin Complaint**

In March 2005, while Plaintiff was providing technical support to Lockheed Martin, Plaintiff's supervisor, Stephen Hampton ("Hampton"), received a letter from Lockheed Martin's Director of Corporate Security, complaining of the unprofessional behavior of Plaintiff and a DSS industrial security representative.  (Paper 21, Attach. 3).  In response to

this complaint, Hampton reassigned another team to perform technical support for the Lockheed Martin facility. (Paper 21, Attach. 4). In April 2005, Hampton initiated an internal supervisory inquiry into the Lockheed Martin complaint. (Paper 21, Attach. 5). Plaintiff alleges that she was informed by Lockheed Martin that DSS management had assigned another person to perform technical support. (Paper 1 ¶ 16).

The supervisory inquiry was conducted by Douglas Stone ("Stone"), a DSS Action Officer for the Capital Region. (Paper 1 ¶ 17; Paper 21, Attach. 7). On May 12, 2005, Stone held an informational meeting with Plaintiff and her attorney regarding the Lockheed Martin complaint letter. (Paper 21, Attach. 6, at 7). At the meeting, Plaintiff requested a copy of the Lockheed Martin complaint letter, but Stone refused because the supervisory inquiry had not yet begun and no fact-finding had been initiated. (*Id.*). Stone advised Plaintiff that she could request a copy of the letter through a Freedom of Information Act ("FOIA") request. (*Id.*).

On November 9, 2005, Stone met with Plaintiff to discuss the results of the supervisory inquiry and to get her response to the allegations contained in the Lockheed Martin letter. (Paper 21, Attach. 6, at 26). Plaintiff provided a written response to Stone in a letter dated January 17, 2006.

3

(Paper 21, Attach. 7).   Upon review of Plaintiff's response and the inquiry report, Christopher Forrest ("Forrest"), Plaintiff's new supervisor, decided that no further action was necessary and that neither the complaint letter nor the inquiry would be maintained in Plaintiff's personnel file.   (Paper 21, Attach. 9).

According to Plaintiff, at the time of her removal from the Lockheed Martin facility, she was the only African-American and only female serving in a technical position within the Capital Region.   (Paper 1 ¶ 18).   Plaintiff asserts that her technical expertise was questioned on a daily basis by the management in a demeaning and demoralizing manner.   (*Id.*).   Plaintiff also contends that the Agency's internal policies were inconsistent and that she was generally subjected to a hostile work environment because she continued to express concerns about disparate treatment within the field office.   (*Id.*).

### B.   May 2006 EEO Activity

On May 11, 2006, Plaintiff filed an administrative complaint of discrimination with the Agency claiming that her then-supervisor, Hampton, discriminated against her based on race, sex, and reprisal when he initiated the supervisory inquiry regarding the allegations contained in the Lockheed Martin letter and reassigned the facility to another IT

Specialist.   (Paper 21, Attach. 10).   Plaintiff also alleged
that Hampton and Forrest discriminated against her based on
race, sex, and reprisal by not permitting her to view, receive a
copy of, or respond to the Lockheed Martin letter.   (*Id.*).   On
November 13, 2006, Plaintiff withdrew her complaint.   (Paper 21,
Attach. 16).

### C.   Plaintiff's Reassignment Requests

In September 2006, Larry Moore ("Moore") became Plaintiff's
supervisor.   (Paper 21, Attach. 2, 5).   In November 2006, when
Plaintiff learned that she had been reassigned to the Lockheed
Martin facility, she objected twice in writing to the
reassignment.   (Paper 1 ¶ 19; Paper 21, Attach. 14).   Plaintiff
objected to the reassignment because of her then pending EEO
complaint.   (Paper 1 ¶ 19).   Plaintiff also requested that she
be reassigned from Moore's supervision.   (Paper 21, Attach. 15).

On December 4, 2006, Forrest and Moore met with Lockheed
Martin to discuss Plaintiff's reassignment and all agreed to
have her return to the facility.   (Paper 21, Attach. 17).   On
December 19, 2006, Moore denied Plaintiff's requests not to be
reassigned to Lockheed Martin.   (*Id.*).

On December 20, 2006, Plaintiff filed an EEO complaint with
the Agency alleging that she was subjected to a hostile work
environment due to her race and sex and in retaliation for her

earlier EEO activity. (Paper 21, Attach. 18). Plaintiff amended her EEO complaint several times between December 2006 and May 2007 to add claims. (Paper 21, Attach. 27, 29, 32, 34, 36).

On January 3, 2007, Plaintiff sent a letter to Clem Boyleston ("Boyleston"), Deputy Director of the DSS Office of the Designated Approving Authority, and Mary Griggs, the DSS Director of Industrial Security, requesting that her reassignment to any Lockheed Martin facility be stopped and that she be reassigned from Moore's supervision. (Paper 21, Attach. 19).

On January 11, 2007, Plaintiff sent a letter to Boyleston requesting a lateral assignment to an IT Specialist System Security Plan Reviewer position at the Office of Designative Approval Authority. (Paper 21, Attach. 21, at 3).

After receiving Plaintiff's job reassignment requests, Boyleston requested a meeting in January 2007 with Industrial Security Program ("ISP") management, including, Forrest, Moore, and Valerie Heil ("Heil"), Acting Industrial Security Program Manager. (Paper 21, Attach. 38, 41, and 46). The meeting was scheduled for January 17, 2007 and was identified on the recipients' Outlook calendars, which were visible to everyone, as "Resolution of Simmington Issue." (Paper 1 ¶ 21; Paper 21,

Attach. 38, 41, and 46).   Later that month, another meeting with the same heading, "Resolution of Simmington Issue," was scheduled for February 21, 2007 and appeared on the Outlook calendars.  (*Id.*)   Although Forrest encouraged Moore to contact Heil to change the subject line, (Paper 21, Attach. 41), Moore did not see a problem with the subject line.  (Paper 21, Attach. 46).   One of Plaintiff's co-workers, Michael Wells, confirmed observing the headings and stated that management did not display that type of heading with any other employees.  (Paper 21, Attach. 43).   Plaintiff found this conduct to be demeaning and embarrassing because none of her Caucasian male colleagues were treated or exposed in this manner with respect to personnel issues.  (Paper 1 ¶ 21; Paper 21, Attach. 47).   On March 19, 2007, Boyleston sent an email to Plaintiff, denying her request for reassignment.

**D.   The DSS Inspector General Investigation**

On January 10, 2007, Moore questioned Plaintiff in an email about her late arrival to work on January 5, 2007.  (Paper 1 ¶ 20; Paper 10, Attach. 21, at 1).   After not receiving a response from Plaintiff, Moore sent Plaintiff emails on January 17, 18, and 19 asking her to explain why she arrived late to work.  (Paper 1 ¶ 20; Paper 21, Attach. 21, at 4-7).   In the January 19 email, Moore explained that if he did not get an

adequate answer from Plaintiff, he would have to amend her time card for that morning to leave without pay ("LWOP"). (Paper 21, Attach. 21, at 7). That same day, Plaintiff informed Moore that she did not recall the exact time that she entered the building and that others in the office could substantiate when she arrived. (Paper 21, Attach. 21, at 8). The parties dispute when Plaintiff arrived at work on January 5, 2007. (Paper 21, Attach. 21). Plaintiff asserts that no other employee has ever been subjected to such scrutiny by the management. (Paper 1 ¶ 20).

On February 1, 2007, at the direction of other management human resources officials, Moore requested assistance to determine when Plaintiff arrived at work on January 5, 2007. (Paper 1 ¶ 24; Paper 21, Attach. 26, at 2). On February 5, 2007, Vera Denison, Deputy Inspector General ("IG") was authorized to conduct an administrative inquiry regarding Plaintiff's leave and attendance issues. (Id.). Moore has never initiated an IG complaint against any other employee. (Paper 21, Attach. 46). On March 12, 2007, the Deputy IG contacted Plaintiff to inform her of the administrative inquiry. (Paper 1 ¶ 24; Paper 21, Attach. 26, at 3). The Deputy IG interviewed Plaintiff on March 13, 2007. (Paper 21, Attach. 26, at 3). Although Denison prepared a draft report of the

administrative inquiry, a final report was never completed and disseminated.    (Paper 21, Attach. 26; Attach. 39, at 3). Plaintiff was not placed on LWOP status or docked pay for January 5, 2007. (Paper 21, Attach. 20).

### E.    Work-From-Home Requests

Plaintiff asserts that Moore required her to request prior approval before working remotely from her home although Plaintiff's Caucasian male co-workers were not required to seek formal approval.    (Paper 1 ¶ 22; Paper 21, Attach. 49).    The parties dispute whether Moore required all employees to seek approval from him before working from home.

### F.    Letter of Expectation and May 2007 Performance Appraisal

On March 8, 2007, Moore sent Plaintiff a "Letter of Expectation" concerning Plaintiff's marginal performance and outlining what Moore expected of Plaintiff in the future. (Paper 1 ¶ 23; Paper 21, Attach. 30).    Moore has never issued such a letter to any other employee.    (Paper 21, Attach. 46). On May 11, 2007, Moore gave Plaintiff an "Unacceptable" rating on his appraisal of Plaintiff's performance from July 24, 2006 through March 31, 2007.[1]    (Paper 21, Attach. 33).    In many of the

---

[1] Plaintiff's complaint refers to two evaluations: a mid-year review with a rating of "minimal successful" (Paper 1 ¶ 25) and an "Unacceptable" rating for the period of July 24, 2006 through March 31, 2007.    (Paper 1 ¶ 28).    Plaintiff's complaint

DSS core elements and standards, Moore rated Plaintiff as "marginal" or "unacceptable." (*Id.*). According to Plaintiff, at the time of the review, Plaintiff had issued her recommendations to ISS regarding the only two pending accreditations but had not received any response. (Paper 1 ¶ 25). The remainder of Plaintiff's work consisted of annual security reviews, which were not pending at the time of review. (*Id.*).

In all of Plaintiff's prior performance evaluations, she received "exceptional" or "fully successful" ratings. (Paper 1 ¶ 26). None of Plaintiff's previous supervisors had ever cited her for incorrect data entries. (*Id.*). In 2002-2003, Plaintiff received an On-Spot Award for accrediting the information systems at the Johns Hopkins University Applied Physics Laboratories. (*Id.*). In July 2004, Plaintiff received a Superior Accomplishment Award. (*Id.*).

G.   **Security Clearance and Subsequent Removal**

While working for DSS, Plaintiff held a Top Secret security clearance. (Paper 1 ¶ 9). In accordance with DOD Regulation 5200.2-R, "Personnel Security Program," all DOD civilian employees with a Top Secret clearance are subject to a Periodic Reinvestigation ("PR") every five years. (Paper 21, Attach. 2,

_____

is likely referring to the same evaluation, the Performance Plan and Appraisal. (Paper 21, Ex. 33).

at 13).   In April 2003, Plaintiff was due for her 5-year PR. (*Id.*).   On or about July 26, 2007, Plaintiff was questioned by DSS Polygraph Examiner, Charles Whiting ("Whiting"), purportedly about her October 2004 PR.   (Paper 1 ¶ 29).   Whiting's questions focused on a large deposit of money in the State Department Federal Credit Union in November 1997 and a foreclosure on real property which Plaintiff had purchased for her nephew in 1996. (*Id.*).   Plaintiff was questioned extensively on these issues despite having answered the same questions in October 2004 by Special Investigator Joseph Michael O'Shea, Office of Personnel Management, in connection with her PR.   (*Id.*).   After conducting the investigations, O'Shea noted that "Simmington has an excellent credit rating and there is no reason for anyone to question her financial responsibilities . . . . Simmington is not delinquent on any payments."   (*Id.*).   O'Shea further noted that

> Simmington maintains contact with her nephew
> in federal prison . . . . She speaks to him
> on the phone approximately once per week and
> she also exchanges letters with him, amount
> unknown   .   .   .   .   Simmington's   immediate
> family and close friends are [the] only
> people   that   know   about   her   nephew's
> situation   .   .   .   .   This   cannot   be   used
> against Simmington for purposes of blackmail
> or   coercion   and   it   does   not   affect   her
> judgment or reliability.

(*Id.*).

On February 12, 2008, Consolidated Adjudications Facility, Washington Headquarters Services issued a memorandum announcing a tentative determination to revoke Plaintiff's eligibility for access to classified information and/or occupancy of a sensitive position. (Paper 1 ¶ 30; Paper 21, Attach. 52). Plaintiff learned of her suspended access on February 22, 2008. (Paper 1 ¶ 30; Paper 30, Attach. 19). The Statement of Reasons included with the memorandum cited the foreclosure and large cash deposit as a basis for Plaintiff's suspended access. (*Id.*). On March 10, 2008, the DSS Director of Human Resources sent a letter to Plaintiff advising her of his proposal to suspend her indefinitely from duty without pay, based on the memorandum announcing her suspended access. (Paper 1 ¶ 31; Paper 21, Attach. 54). On April 21, 2008, DSS received Plaintiff's response to the Statement of Reasons to revoke her eligibility for access. (Paper 21, Attach. 55; Paper 30, Attach. 21). On May 23, 2008, the DSS Director of Human Resources sent a memorandum to Plaintiff offering an appointment to a Defense Civilian Intelligence Personnel System position in the Excepted Service. (Paper 1 ¶ 32; Paper 21, Attach. 57). Plaintiff's complaint states that she declined the offer because her acceptance of the Excepted Service position would have resulted in the loss of her EEO complaints. (Paper 1 ¶ 32).

12

However, she acknowledged in her Statement of Declination that her "acceptance or declination of the appointment offer has no impact on pending Equal Employment Opportunity (EEO) matters." (Paper 21, Attach. 59).

On June 24, 2008, the DSS Director of Human Resources sent to Plaintiff a memorandum to notify her of his proposal to remove her from her ITS position. (Paper 21, Attach. 60). On July 10, 2008, Mary Griggs, Director of Industrial Security, sent Plaintiff a memorandum informing Plaintiff of her decision to accept the proposal to remove Plaintiff from federal service. (Paper 21, Attach. 61). Plaintiff was removed from her position with DSS and from federal service on July 26, 2008. (*Id.*).

Following Plaintiff's filing of an EEO complaint in December 2006 and the subsequent amendments, an investigation of Plaintiff's allegations was undertaken from February through August 2007. (Paper 21, Attach. 49). The investigative report was completed in October 2007 and provided to Plaintiff in November 2007. (Paper 21, Attach. 49, 50). Because the Agency did not issue a final decision within 180 days from the date that Plaintiff filed a formal EEO complaint, Plaintiff was eligible to file a civil action. Plaintiff filed a complaint in this court on November 24, 2008. Defendant filed a motion to dismiss or for summary judgment on May 10, 2009. (Paper 20).

## II.   Motion to Dismiss Under Fed.R.Civ.P. 12(b)(1)

Defendant has moved to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) for failure to exhaust administrative remedies.

### A.   Standard of Review

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768. "[B]ecause of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*." *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997).

14

B.    **Analysis**

1.    **Claims in May 2006 EEO Complaint Never Exhausted**

Title VII makes it

>       an unlawful employment practice for an
>       employer . . . to discharge any individual,
>       or otherwise to discriminate against any
>       individual with respect to his compensation,
>       terms, conditions, or privileges of
>       employment, because of such individual's
>       race, color, religion, sex, or national
>       origin . . . .

42 U.S.C. § 2000e-2(a)(1).   Before a federal civilian employee

may file suit under Title VII, she must first exhaust her

administrative remedies.   42 U.S.C. § 2000e-16(c).   *See Labor v.*

*Harvey*, 438 F.3d 404, 415 (4th Cir. 2006).   Prior to filing a

charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC"), a federal civilian employee has forty-five

days to initiate contact with an EEO Counselor after the

occurrence of an employment action or matter that she believes

to be discriminatory.   29 C.F.R. § 1614.105(a)(1).   If the

matter is not resolved, the complainant may then file an EEO

complaint.   29 C.F.R. § 1614.105(d).   Title VII further requires

that a charge of discrimination "shall be in writing under oath

or affirmation and shall contain such information and be in such

form as the [EEOC] requires."   42 U.S.C. § 2000e-5(b).   The

scope of the plaintiff's right to file a federal lawsuit is

determined by the charge's contents.   *Jones v. Calvert Group*

*Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. *Id.* The initial inquiry under any Title VII claim must be to ensure that all administrative prerequisites have been fulfilled, before considering the merits of the claim.

Defendant has moved to dismiss claims from Plaintiff's May 2006 EEO complaint for Plaintiff's failure to exhaust administrative remedies. In May 2006, Plaintiff filed an EEO complaint alleging discrimination and retaliation covering a period of time from 2000 through 2006. (Paper 21, Attach. 10). Plaintiff's charges included that: (1) she was the victim of race discrimination in 2005 because she was disparately treated when her supervisor conducted a supervisory inquiry in response to a complaint letter from Lockheed Martin and was reassigned, (2) she was retaliated against for participating in another employee's EEO complaint, (3) she experienced sex discrimination since 2000 because her expertise was questioned daily and her technical authority was undermined by management, and (4) she experienced sex discrimination between 2002 and 2003 because she documented concerns about Johns Hopkins University Applied Physics Laboratories and her supervisor never addressed them.

16

(*Id.*).  Plaintiff was notified of the acceptance of some of her claims (Lockheed Martin investigation and reassignment) and the dismissal of others, and an EEO investigation of her accepted claims began.  (*Id.*).  Before the investigation was completed, Plaintiff withdrew her EEO complaint on November 13, 2006. (Paper 21, Attach. 16).  Because Plaintiff failed to exhaust her administrative remedies for the May 2006 EEO complaint, she is not permitted to raise these claims here.

Plaintiff contends that her May 2006 claims are not time-barred because "she has established a pattern of discrimination, commencing in 2003 when she began documenting her concerns with DSS management, and continuing through the time that she filed and subsequently amended her EEO Complaints."  (Paper 30, Attach. 2, at 6-7).  However, the United States Court of Appeals for the Fourth Circuit does not permit "a non-class complaint of discrimination [to] rely on an alleged 'pattern and practice' claim."  *Pueschel v. Veneman*, 185 F.Supp.2d 566, 574 (D.Md. 2002)(citing *Settle v. Baltimore County*, 34 F.Supp.2d 969, 986 (D.Md. 1999), *aff'd*, 203 F.3d 822 (4th Cir. 2000)(table)).

Plaintiff also contends that her hostile work environment claim is not time-barred.  Plaintiff correctly states that hostile work environment claims are different in kind from discrete acts, and that hostile work environment claims "will

17

not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).  However, the claims contained in the May 2006 EEO complaint pertained to discrete acts of discrimination, not a claim of hostile work environment.  In *Morgan*, the Court made clear that for discrete discriminatory acts, a Title VII plaintiff must file his charge within the appropriate time period.  (*Id.*).  Because Plaintiff withdrew her May 2006 EEO complaint, she failed to exhaust her administrative remedies as to those claims and is also now time-barred from bringing those claims in this action.  Plaintiff cannot attempt to revive these claims now by labeling them as part of a hostile work environment claim.

Therefore, the claims contained in the May 2006 EEO complaint will be dismissed for lack of subject matter jurisdiction.

   **2.   Other Claims Never Exhausted**

Title VII requires, and the Fourth Circuit has held, that the scope of a judicial complaint is limited to allegations in the EEOC administrative charge.  *Jones*, 551 F.3d at 300.  A Title VII lawsuit may only include "those discrimination claims stated in the initial charge, those reasonably related to the

original complaint, [] those developed by reasonable investigation of the original complaint," and those contained in official amendments to the EEO complaint. *Id.*; *cf. Khoury v. Meserve*, 268 F.Supp.2d 600, 608 (D.Md. 2003)(citing *Sloop v. Memorial Mission Hospital, Inc.*, 198 F.3d 147, 149 (4th Cir. 1999)(holding that a plaintiff who took no official action to amend her administrative charge of discrimination had not exhausted her remedies with respect to the claim not included in the original charge)). "A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d).

The Fourth Circuit has clarified that, in contrast to substantive Title VII claims, a plaintiff is not required to exhaust administrative remedies for retaliation claims related to an EEO complaint. In *Jones*, the court explained that a plaintiff may raise a retaliation claim for the first time in federal court. *Jones*, 551 F.3d at 302 (citing *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992). The court stated that "the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission," and that "retaliation for the filing of

an EEOC charge as discrimination is indeed like or reasonably related to and growing out of such allegations." *Id.* (internal quotation marks omitted). The court reasoned that "a plaintiff that has already been retaliated against one time for filing an EEOC charge will naturally be reluctant to file a separate charge, possibly bringing about further retaliation." *Id.*

Defendant has moved to dismiss Plaintiff's claims occurring after May 23, 2007 for failure to exhaust administrative remedies. On December 20, 2006, Plaintiff filed an EEO complaint. (Paper 21, Attach. 18). Plaintiff amended her EEO complaint several times between December 2006 and May 2007 to add claims. (Paper 21, Attach. 27, 29, 32, 34, 36). The EEO investigation of these claims was completed on August 7, 2007, and the investigative report was completed on August 27, 2007. (Paper 21, Attach. 49). Plaintiff asserts that she filed additional amendments to her EEO complaint on July 6, 2007 and August 27, 2007. (Paper 30, Attach. 9). "Once a valid charge has been filed, a simple failure by the EEOC to fulfill its statutory duties regarding the charge does not preclude a plaintiff's Title VII claim." *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002). Here, contrary to Defendant's assertion, the Agency did not address the July 6, 2007 amendment in the investigation. The Agency was required to include the

amendment with Plaintiff's EEO complaint because it was filed before the August 7, 2007 close of the investigation. Because the Agency failed in fulfilling its statutory duties with regard to Plaintiff's July 6, 2007 amendment, the claims contained in that amendment are not dismissed for failure to exhaust administrative remedies.

The August 2007 proposed amendment, however, was not made part of the original EEO complaint because the investigation had already been concluded. Plaintiff's August 2007 proposed amendment to her EEO complaint included a claim that Defendant made her submit to a polygraph examination. Plaintiff included that same claim in her civil Title VII complaint. Plaintiff has not exhausted her administrative remedies for that claim, and thus it must be dismissed as to her substantive Title VII claims. Plaintiff's retaliation claim related to the polygraph examination will survive and will be analyzed for summary judgment. The other claims in Plaintiff's August 2007 proposed amendment are not at issue in this litigation.

Additionally, Plaintiff never raised certain claims in her EEO complaint or amendments to that complaint that she now attempts to raise in civil litigation. Those claims are: (1) management proposed that Plaintiff lose her security clearance, (2) management proposed that Plaintiff's job be suspended, and

(3) Plaintiff was subject to non-disciplinary removal. (Paper 1 ¶¶ 29-32). All of these alleged actions took place after Plaintiff filed the July 6, 2007 amendment to her EEO complaint. Because those claims were not considered by the EEOC, Plaintiff has not exhausted her administrative remedies. Therefore, the court must dismiss these claims as to any substantive Title VII charge Plaintiff bases on them and as to Plaintiff's constructive discharge claim. Plaintiff's retaliation claims related to the proposed loss of her security clearance, her suspension, and her non-disciplinary removal will survive and will be analyzed for summary judgment.

## III. Motion for Summary Judgment

Defendant has also moved to dismiss the case for failure to state a claim under Fed.R.Civ.P. 12(b)(6), or in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56.

### A.   Standard of Review

When "matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b). *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998)(stating that "[a] cursory glance at the Federal Rules of Civil Procedure. . . make[s] clear that the motion before the court could be treated

as a motion for summary judgment."). Here, Defendant has appended multiple documents to its motions, including Plaintiff's EEOC charge of discrimination and the Agency's investigative report and post-investigative notice of options, as well as several affidavits. Plaintiff has also attached her EEOC charge, the Agency's investigative report and post-investigative notice of options, and correspondence. Plaintiff raises no objection to the inclusion of these documents. Generally, where the parties present matters outside of the pleadings and the court considers those matters, the court will treat the motion as one for summary judgment. *See Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty*

23

*Lobby, Inc*., 477 U.S. 242, 250 (1986); JKC *Holding Co. LLC v. Washington Sports Ventures, Inc*., 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp*., 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp*., 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## B.   Analysis

The claims in Plaintiff's complaint which she properly exhausted and are before the court are: (1) that she was reassigned to Lockheed Martin in November 2006 (Paper 1 ¶ 19), (2) that she was questioned about arriving late to work (*Id.* at ¶ 20), (3) that a meeting related to her reassignment was listed on public calendars (*id.* at ¶ 21), (4) that she was required to ask in advance to work from home (*id.* at ¶ 22), (5) that she received a letter outlining her deficient performance (*id.* at ¶ 23), (6) that she was subject to an IG investigation regarding her late arrival (*id.* at ¶ 24), (7) that she received a minimally successful mid-year evaluation (*id.* at ¶ 25), and (8) that she received an unacceptable final rating for the period ending March 2007 (*id.* at ¶ 28).  Furthermore, the court will also consider the claims in Plaintiff's July 6, 2007 amendment.   The July 6, 2007 amendment asserts that the management continued to harass and retaliate against Plaintiff. The amendment contains the following claims: (1) that Plaintiff was asked to submit to a polygraph, (2) Plaintiff was scrutinized by Moore for her work and schedule, (3) Plaintiff was charged as Absent Without Official Leave, and (4)

Plaintiff's grievance regarding her "Unacceptable" rating was denied. (Paper 30, Attach. 9). Plaintiff's retaliation claims include the aforementioned claims plus the following alleged adverse actions: (1) Plaintiff had to submit to a polygraph examination as part of her security clearance, (2) management proposed that Plaintiff lose her security clearance, (3) management proposed that Plaintiff's job be suspended, and (4) Plaintiff was subject to non-disciplinary removal.

Where, as here, the plaintiff has no direct evidence of discrimination, the court must apply the three-step procedure outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must demonstrate a *prima facie* case. The plaintiff's burden in establishing a *prima facie* case is "not onerous"; rather, she is required only to prove each element by a preponderance of the evidence. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the plaintiff succeeds in making this showing, the burden then shifts to the employer to offer a non-discriminatory basis for the adverse employment action. *See Matvia v. Bald Head Island*, 259 F.3d 261, 271 (4th Cir. 2001). The plaintiff must then demonstrate that the reason proffered by her employer for the adverse action is pretextual. *Id.; see also Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000)("The

26

*McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII.").

### 1.   Disparate Treatment

To establish a *prima facie* case of disparate treatment based on her race or gender, an employee must prove: (1) that she is a member of a protected class; (2) that she was qualified for the job and her performance was satisfactory; (3) that in spite of her qualifications and performance, she suffered an adverse employment action; and (4) that she was treated differently than similarly situated employees outside her protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Popo v. Giant Foods LLC*, No. WDQ-08-11902009 WL 4908840, at *4 (D.Md. 2009)(citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007), *cert. denied*, 128 S.Ct. 955 (2008)).   The first two elements of the *prima facie* case are undisputed. Plaintiff is an African-American female.   Plaintiff also was qualified for her position and her performance was satisfactory.[2]

Plaintiff has not established that she suffered an adverse employment action.   An employer's act must alter the terms, conditions, or benefits of employment to qualify as an adverse employment action. *Finnegan v. Dept. of Public Safety and Corr.*

---

[2] Although Plaintiff's May 2007 mid-year review evaluated her performance as "Unacceptable," she was later placed on a Performance Improvement Plan and successfully completed it by the end of the year.   (Paper 21, Attach. 48, at 51).

*Servs.*, 184 F.Supp.2d 457, 461 (D.Md. 2002)(citing *Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001)). Plaintiff's reassignment to the Lockheed Martin facility, despite her objections, did not alter the terms or conditions of her employment. "The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004), *cert. denied*, 543 U.S. 959 (2004). "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Id.* (quoting *Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999)). Here, Plaintiff had previously been assigned duties at Lockheed Martin, and was simply reassigned those duties after an internal inquiry about complaints from the company revealed no actionable conduct on her part. (Paper 21, Attach. 6, 9, 17). Plaintiff's reassignment does not constitute an adverse employment action to establish a *prima facie* case of discrimination.

Plaintiff's other claims also do not constitute adverse employment actions. Plaintiff's terms, benefits, or conditions of her employment were not altered when her supervisor

28

questioned her about arriving late to work on January 5, 2007, when a meeting was scheduled on a public Outlook calendar for "Resolution of Simmington Issue," or when she was required to request approval from her supervisor to work remotely. Although Plaintiff may have been embarrassed or annoyed by such actions, they did not amount to adverse employment actions. Further, Plaintiff did not suffer an adverse employment action that affected the terms or benefits of her employment when an IG complaint was filed regarding her arrival time on January 5, 2007 or when she received a letter of expectation and an "Unacceptable" rating for her performance. Indeed, the investigation of the IG complaint was never completed, Plaintiff was never docked pay for January 5, 2007, and Plaintiff improved her performance by the end of the year to an acceptable level.

Because Plaintiff was unable to present facts to show that she suffered an adverse employment action, Plaintiff fails to establish a *prima facie* case of disparate treatment on the basis of race or sex. Thus, Defendant's motion for summary judgment as to Plaintiff's claim of disparate treatment will be granted.

## 2. Retaliation

To establish a *prima facie* case of retaliation, the plaintiff must show that: (1) she engaged in a protected activity, (2) her employer acted adversely against her, and (3)

the protected activity was causally connected to the adverse action. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (citing *Beall v. Abbott Labs*, 130 F.3d 614, 619 (4th Cir. 1997)).   Plaintiff meets the first element because she engaged in a protected activity when she filed an EEO complaint. The parties dispute whether Defendant acted adversely against Plaintiff.

A plaintiff must show that her employer's action was "materially adverse" to establish the second element. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).   The Court has clarified that, unlike Title VII's substantive provisions, the anti-retaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64.   Rather, in determining whether an alleged retaliatory action is materially adverse, courts look to whether the action was harmful enough to have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68.   An employer's action is not materially adverse if it only consists of "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Defendant argues that no adverse action was taken against Plaintiff after she filed her May 2006 EEO complaint (which she

later withdrew) or after she filed her December 2006 EEO complaint and subsequent amendments. In opposition, Plaintiff claims that she suffered adverse actions when: (1) despite her objections, she was reassigned to the Lockheed Martin facility after she had filed an EEO complaint in May 2006 regarding the supervisory inquiry following Lockheed Martin's letter complaint about her; (2) her supervisor questioned her about when she arrived to work on January 5, 2007; (3) a meeting was scheduled on a public Outlook calendar for "Resolution of Simmington Issue"; (4) she was required to request approval from her supervisor to work remotely; (5) an IG complaint was filed regarding her arrival time on January 5, 2007; (6) she was given a letter of expectation and an "Unacceptable" rating for her performance; (7) she had to submit to a polygraph examination as part of her security clearance; (8) management proposed that Plaintiff lose her security clearance; (9) management proposed that Plaintiff's job be suspended, and (10) Plaintiff was subject to non-disciplinary removal.

Plaintiff fails to demonstrate that she suffered a materially adverse employment action. Defendant's action of reassigning Plaintiff to Lockheed Martin was not materially adverse. Plaintiff was simply reassigned to duties to which she had been assigned before once an internal inquiry about

complaints from Lockheed Martin revealed no actionable conduct on Plaintiff's part.   Plaintiff has not shown that any harm or injury resulted from the reassignment.   *See Burlington*, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.").   Likewise, Defendant's actions of requiring Plaintiff to obtain permission to work from home, questioning Plaintiff about her attendance, and scheduling a meeting with Plaintiff's name mentioned on an Outlook calendar were negligibly burdensome and would not dissuade a reasonable worker from making or supporting a charge of discrimination.   *See, e.g., Martin v. Merck & Co., Inc.*, 446 F.Supp.2d 615, 637 (W.D.Va. 2006)(finding that the fact that the word "lawsuit" was written next to the plaintiff's name on an employee list was an unprofessional action, but not a materially adverse action); *Parsons v. Wynne*, 221 Fed.Appx. 197, 198 (4th Cir. 2007)(holding that an employer's removal of the plaintiff from an alternate work schedule arrangement was not a materially adverse action); *Zackrie v. Lockheed Martin Corp.*, No. RWT 04-1864, 2006 WL 2849767, at *8 (D.Md. Oct. 2, 2006).

Furthermore, Defendant's IG investigation of Plaintiff's work attendance and Defendant's actions of giving Plaintiff a letter of expectation and an "Unacceptable" rating were not

materially adverse actions. *See, e.g., Pannell v. Nicholson*, No. 7:06cv00088, 2008 WL 565098, at *5 (W.D.Va. Feb. 29, 2008)(stating that an employer's placement of the plaintiff on leave restriction and request for documentation of the plaintiff's leave was a reasonable response to the plaintiff's attendance issues and would not dissuade a reasonable employee from filing a discrimination claim); *Blaloch v. Norton*, 517 F.Supp.2d. 345, 358 (D.D.C. 2007)(finding that the mere initiation of an investigation into a plaintiff's conduct, without tangible consequences, which is never acted upon is not materially adverse), *aff'd*, 550 F.3d 1191 (D.C.Cir. 2008); *Washington v. Norton*, No. 3:04CV104, 2007 WL 1417290, at *4 (N.D.W.Va. 2007)("Reprimanding an employee for unprofessional conduct or warning an employee about poor performance by letter . . . would not dissuade a worker from filing protected complaints"); *Zackrie*, 2006 WL 2849767, at *8 (finding that an employer's action of documenting areas for the plaintiff's improvement was not materially adverse); *Parsons*, 221 Fed.Appx. at 197 (stating that an employer's negative performance evaluation of a plaintiff would not dissuade a reasonable employee from making or supporting a charge of discrimination).

In addition, the polygraph examination was not a materially adverse action. *See, e.g., Alford v. South Carolina Dept. of*

*Corrections*, No. 3:04-23257-CMC-JRM, 2006 WL 1997434, at *4, n.5 (D.S.C. July 17, 2006)(stating that an employer, which had a policy allowing and sometimes requiring polygraph examinations, did not act in a materially adverse manner in requiring the plaintiff to submit to a polygraph examination), *aff'd* 219 Fed.Appx. 321 (4th Cir. 2007).

Likewise, Defendant's actions of converting Plaintiff's job to an Excepted Service position and terminating Plaintiff when she refused to take the Excepted Service position were not materially adverse. Defendant presents evidence that Plaintiff's position, along with the positions of all other civilian DSS employees, was converted to an Excepted Service position. (Paper 21, Attach. 57, 58, 63). Defendant required all civilian DSS employees to make a selection to accept or refuse an Excepted Service position, regardless of their gender, race, age, or prior EEO activity. These actions would not have dissuaded a reasonable worker from making or supporting a charge of discrimination and therefore were not materially adverse.

Finally, the court does not have subject matter jurisdiction to review Defendant's proposed suspension of Plaintiff's security clearance that resulted in a proposed suspension of Plaintiff's job. Unless Congress specifically provides otherwise, courts are unable to review a decision

34

regarding a security clearance investigation or a decision to revoke a security clearance, even in the context of a Title VII retaliation claim. *Becerra v. Dalton*, 94 F.3d 145, 148-49 (4th Cir. 1996); *Department of Navy v. Egan*, 484 U.S. 518 (1988). These two retaliation claims will be dismissed because the court does not have subject matter jurisdiction over them.

Because Plaintiff has not established that she suffered an adverse employment action, she cannot establish a causal connection with her protected activity. Thus, Plaintiff has not established a *prima facie* case of retaliation.

Furthermore, even if any of the actions Plaintiff has alleged were materially adverse actions, Plaintiff has not provided any evidence that Defendant's asserted reasons for the actions were pretextual. Defendant has offered non-discriminatory reasons for all of its actions. Defendant argues that Plaintiff was reassigned to the Lockheed Martin facility because she had previously been assigned there and had only been removed from working there because of the company's complaints regarding her behavior. After an internal inquiry from the company revealed no actionable conduct on Plaintiff's part, Defendant reassigned her. (Paper 20, Attach. 1, at 26). Defendant contends that Plaintiff was questioned about arriving late because Moore noticed that she had arrived to work late.

Moore informed Plaintiff that she would have to take LWOP for this time and instituted an IG investigation because Plaintiff did not provide an adequate explanation to explain her absence. (*Id.* at 9-11).   Defendant maintains that the meeting scheduled on a public Outlook calendar as "Resolution of Simmington Issue" was scheduled that way because the purpose of the meeting was to resolve Plaintiff's reassignment request.   (*Id.* at 7-8).   As for Plaintiff's request to work from home, Defendant asserts that Moore "required that all of his reports request prior approval to work from home by telephone or email."   (*Id.* at 12). Defendant further contends that Plaintiff was given a letter of expectation and an "Unacceptable" rating for her performance because Plaintiff had not followed procedures regarding formatting of letters, use of zip files, the content of folders used for contractor accreditation letters, and attendance of office and client meetings.   (*Id.*).   Defendant asserts that Plaintiff had to submit to a polygraph examination as part of her security clearance PR because Plaintiff had previously provided evasive answers to OPM security clearance interview questions.   (*Id.* at 14).   Defendant argues that management proposed that Plaintiff lose her security clearance and that her job be suspended because Plaintiff "failed to provide truthful and candid answers in the security clearance process," which

"raised serious questions about her judgment, reliability, and trustworthiness." (*Id.*). Finally, Plaintiff was subject to non-disciplinary removal because DSS converted all of its civilian positions to Excepted Service positions. Defendant offered Plaintiff an Excepted Service position, but she declined the position. Defendant informed Plaintiff that declining the position would mean that she would be subject to non-disciplinary removal and told her that she could appeal the removal decision. Plaintiff did not appeal Defendant's decision to terminate her employment.

Despite Defendant's extensive explanations of its alleged adverse actions, Plaintiff has not shown that these actions were pretextual. Therefore, Defendant's motion for summary judgment as to Plaintiff's retaliation claims will be granted.

### 3. Hostile Work Environment

To establish a hostile work environment claim, the plaintiff must show: (1) she was subjected to unwelcome conduct; (2) the unwelcome conduct was based on sex or race; (3) it was sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and (4) some basis exists for imputing liability to the employer. *Khoury*, 268 F.Supp.2d at 612 (citing *Smith v. First Union Nat. Bank*, 202 F.3d 234, 241 (4th Cir. 2000)). Defendant argues that

Plaintiff cannot establish that the harassment she claims she suffered was because of her race, sex, or prior EEO activity, or that the harassment was sufficiently pervasive or severe to create a hostile work environment.   In response to Defendant's argument, Plaintiff does not expressly address her claim of hostile work environment.   Instead, she restates the facts alleged in her complaint and cursorily addresses the relationship between the alleged hostile work environment and constructive discharge.   (Paper 30, Attach. 2, at 11-16).

In order to establish that the harassment she suffered was based on her gender or race, Plaintiff must do more than just claim membership in a protected class; Plaintiff must show that she was singled out for adverse treatment by the harasser because of her membership in a group protected by Title VII. *Khoury*, 268 F.Supp.2d at 612 (quotation and citation omitted)(citing *Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138, 142 (4th Cir. 1996)(a plaintiff must show that but for her membership in a protected class, she would not have been subjected to harassment)).   Plaintiff's opposition and the attached exhibits and affidavits show no direct evidence of harassment based on her race, sex, or EEO activity.   In her opposition, Plaintiff states that

> Moore conducted a campaign of intimidation
> and misinformation aimed at discrediting and

38

> harassing Ms. Simmington.   In doing so,
> Moore callously disregarded applicable DSS
> regulations and distorted facts concerning
> numerous incidents based on her race,
> gender, and prior EEO activity.   In fact,
> Moore was known to have issues with women of
> color.

(Paper 30, Attach. 2, at 12).   Additionally, Plaintiff reports,

"None of Ms. Simmington's other Caucasian male colleagues were

singled out or exposed in this fashion, or subjected to such

frivolous scrutiny with respect to personnel issues."

(Paper 30, Attach. 2, at 13).   Plaintiff does not provide any

evidence to support her sweeping allegations that Moore's

actions were fueled by race- and sex-based discriminatory

motives.   That Plaintiff may have felt demeaned or demoralized

by the actions of management does not create a federal cause of

action for hostile work environment merely because Plaintiff

happens to belong to a class protected by Title VII.

Plaintiff's allegations are insufficient to support a reasonable

inference that, but for Plaintiff's membership in a protected

class, she would not have been subjected to the pattern of

treatment she claims constituted a hostile work environment.

Furthermore, Plaintiff fails to establish that the

harassment she claims she suffered was sufficiently pervasive or

severe to create a hostile work environment.   The determination

of the sufficiency of an environment's hostility or abusiveness

39

should be made by considering the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). In response to Defendant's argument, Plaintiff restates the facts and allegations contained in her complaint including her November 2007 reassignment to Lockheed Martin, being questioned about her late arrival to work on January 5, 2007, and the "Unacceptable" rating she received in her May 2007 performance review. Plaintiff further states that the actions taken against her have adversely impacted her personally and professionally. (Paper 30, Attach. 3, at 17).

Plaintiff has not established that the treatment she suffered was sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment. Plaintiff's claims describe treatment that was often critical, frustrating, and embarrassing. Even drawing the inferences in the light most favorable to Plaintiff, the evidence does not establish treatment that is physically threatening or humiliating, an unreasonable interference with Plaintiff's work performance, or otherwise sufficiently severe

40

to create a hostile work environment prohibited under Title VII. *See, e.g., Khoury*, 268 F.Supp.2d at 613 (holding that, although sufficiently severe, a single instance of plaintiff being yelled at, called incompetent, pushed down to her chair, and blocked from leaving the room was not sufficiently pervasive to constitute hostile treatment). Plaintiff describes one particular situation with Moore, her then-supervisor, in which he questioned her about when she arrived to work on January 5, 2007. Plaintiff states that "[o]n January 17th, 18th, 19th, and 23rd, Moore sent Plaintiff harassing emails regarding her late arrival and threatened to place her on leave without pay (LWOP) status if she could not provide a reason for her tardiness." (Paper 1 ¶ 20). This incident is the most frequently occurring, or pervasive, treatment. It does not, however, rise to the level of hostile treatment because the emails were not severe or offensive in nature, did not physically threaten or humiliate Plaintiff, and did not unreasonably interfere with her performance at work. As the Fourth Circuit has explained, "Title VII is not a federal guarantee of refinement and sophistication in the workplace — in this context, it prohibits only harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 773 (4th Cir. 1997).

41

Therefore, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim will be granted.

### 4.    Constructive Discharge

Plaintiff's constructive discharge claim is based on Defendant's suspension of her security clearance and her employment.  Plaintiff also argues that she was forced to resign because she declined an appointment in the Excepted Service. The court does not have jurisdiction over these claims because, as discussed above, Plaintiff did not exhaust the claims in her August 2007 proposed amendment to her EEO complaint.  Therefore, Plaintiff's constructive discharge claim will be dismissed for lack of subject matter jurisdiction.

### 5.    Summary Judgment is Appropriate at this Time

Contrary to Plaintiff's assertion, summary judgment is appropriate at this time.  Both Plaintiff and Defendant have presented numerous exhibits and affidavits in support of their positions.  Moreover, the administrative record in this case is comprehensive.  "Generally, a district court must refuse summary judgment where the non-moving party has not had the opportunity to discover information that is essential to [its] opposition." *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008)(internal quotations and brackets omitted)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986)).  However, a party

42

opposing summary judgment must comply with Fed.R.Civ.P. 56(f), which requires that the party set out the reasons for discovery in an affidavit; it is insufficient to merely assert in its brief that discovery was necessary. *Nader*, 549 F.3d at 961.

Here, neither Plaintiff nor her counsel filed a Rule 56(f) affidavit.  Plaintiff cannot withstand a motion for summary judgment by merely stating, "The facts and allegations contained in Ms. Simmington's Complaint, the Government's Motion and the instant Opposition must be explored."  (Paper 30, Attach. 2, at 17).  Plaintiff's sweeping statement about the need for more discovery is the very kind of language that is insufficient to resist summary judgment in the Fourth Circuit:

> The Fourth Circuit has strictly interpreted the requirements of Rule 56(f), emphasizing the need for a Rule 56 affidavit that "particularly specifies legitimate needs for further discovery" and identifies "which aspects of discovery required more time to complete." *Nguyen* [*v. CNA Corp.*], 44 F.3d [234], at 242 [(4th Cir. 1995)]. Indeed, the Fourth Circuit places "great weight on the Rule 56(f) affidavit" and, to that end, "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Evans*, 80 F.3d at 961 (quoting *Nguyen*, 44 F.3d at 242 (internal citations omitted)).

*Amirmokri v. Abraham*, 437 F.Supp.2d 414, 420 (D.Md. 2006). Therefore, Plaintiff's implicit request for further discovery is denied.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion alternative motion for summary judgment will be granted.  Plaintiff's complaint will be dismissed for lack of subject matter jurisdiction as to (1) claims contained in the May 2006 EEO complaint, (2) the substantive Title VII claims contained in Plaintiff's August 2007 proposed amendment to her EEO complaint, (3) Plaintiff's constructive discharge claim, and (4) Plaintiff's retaliation claims related to her security clearance and related proposed suspension.  Summary judgment will be granted in favor of Defendant on Plaintiff's (1) disparate treatment claim, (2) hostile work environment claim, and (3) all of Plaintiff's remaining retaliation claims.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge